# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| DWIGHT PFEIFFER, ROBIN PFEIFFER, and JENNIFER TICE, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:10-cv-04001-NKL ) ) |
| JERRY WOLFE, | ) ) |
| Defendant. | ) ) ) |

## ORDER

Before the Court is Defendant Jerry Wolfe's Motion for Judgment as a Matter of Law at the End of All Evidence [Doc. # 60, Ex. 1]. For the following reasons, the Court denies the motion.

## I.  Background

This matter was tried to a jury on May 9-10, 2011. The jury returned a verdict in favor of the Plaintiff Dwight Pfeiffer ("Dwight") on his claim for wrongful termination under 42 U.S.C. § 1983. The jury also returned a verdict in favor of Defendant Jerry Wolfe on the Section 1983 wrongful termination claims of Plaintiffs Robin Pfeiffer ("Robin") and Jennifer Tice ("Jennifer"). The jury awarded Dwight $50,000 in actual damages.

The following facts are viewed in the light most favorable to the jury verdict, which is entitled to extreme deference. *See Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1009 (8th Cir. 2008). Dwight, his spouse Robin, and his step-daughter

Jennifer were employed by the Cooper County Sheriff's Department until they were dismissed on January 1, 2009, by then-newly elected sheriff, Jerry Wolfe. Plaintiffs filed this action for wrongful termination under Section 1983, asserting that Defendant Wolfe terminated their employment due to their engagement in political speech activities and thus violated their First and Fourteenth Amendment rights.

While they were employed by the Cooper County Sheriff's Department, Dwight held the position of road deputy, Robin held the position of reserve deputy, and Jennifer held the position of detention officer. Defendant Wolfe's employment at the Sheriff's Department began in 1994. At that time, Dwight was already an employee of the Sheriff's Department.

In 2008, Dwight and Wolfe were both candidates for Cooper County Sheriff. Robin and Jennifer supported Dwight's candidacy. Wolfe hoped that if he won, Dwight would voluntarily leave the Sheriff's Department.

In mid-July 2008, Wolfe discovered that the printing equipment at the Sheriff's Department was used to print copies of campaign literature. At trial, Jennifer testified that she used the Sheriff's Department computer and printer to print literature for Dwight's campaign.

Wolfe ultimately won the election for Sheriff. On or about December 29, 2008, all three of the Plaintiffs received letters from Wolfe, terminating their employment as of midnight on December 31, 2008. The reasons listed in the letters for their dismissal were: "1. Modification of staffing arrangements[;] 2. Your services no longer required." [Doc. # 25-1, at 2, 4, 6.] Robin's letter also included the reason "Downsizing of Reserve Unit."

[Doc. # 25-1, at 4.] Plaintiffs were the only employees terminated by Wolfe at that time. In documents sent to the Missouri Department of Public Safety, Wolfe stated "[s]ervices no longer needed," as the reason for Dwight's and Robin's dismissal. [Doc. # 25-1, at 10, 14.]

Wolfe testified that he terminated Plaintiffs because he did not trust them. Wolfe stated that his main trust issue with Dwight and Jennifer stemmed from the campaign literature copies made at the expense of the Sheriff's Department. As to Robin, Wolfe testified that he believed that she was falsifying her mileage reports that she submitted for reimbursement.

Wolfe also testified that news of a dispute between then-Sheriff Milne and Dwight also played a part in his decision to terminate Plaintiffs. Around August 2008, Captain Barbara Allphin, the jail administrator, informed Wolfe that there had been a "blow out" between then-Sheriff Milne and Dwight. The argument concerned comments allegedly made by Jennifer during work hours that Dwight was going to "clean house" and fire a number of employees if he were elected, which was brought to Sheriff Milne's attention by Captain Allphin. This was the second occasion that such comments were brought to Sheriff Milne's attention. After learning of the first incident, Sheriff Milne instructed Captain Allphin to tell Jennifer to stop making those comments. On the second occasion, Sheriff Milne confronted Jennifer about the alleged comments and she denied making them. Sheriff Milne then told Dwight about Captain Allphin's report of Jennifer's comments. Dwight responded by stating that Sheriff Milne was lying, calling Captain Allphin a "bitch," and stating that the only employee he was going to fire was Captain Allphin. Wolfe also heard about the incident

3

from Rosemary Kraus, an office administrator who had overheard the altercation between Dwight and Sheriff Milne. According to Kraus, Dwight had said of her daughter, "F'g bitch is lying," after Sheriff Milne told Dwight that Kraus's daughter heard Jennifer's statements. [Doc. # 22-4, at 3.] Later, around August 7, 2008, Dwight sent an email to a number of jail employees, including Wolfe, denying the rumor that he planned to terminate jail employees should he be elected Sheriff or that he had made statements to that effect.

Then-Sheriff Milne testified that he "was going to fire [Dwight]" after Dwight called Sheriff Milne a liar, but he decided against it because he thought "it'd be political." [Doc. # 25-1, at 43, 44.] Sheriff Milne also testified that as of December 31, 2008, there was nothing that Plaintiffs had done in their job duties for which he would have fired them. [Doc. # 25-1, at 47.] Specifically, Sheriff Milne testified that he did not think that the copying issue was severe enough that it required Dwight to be fired. [Doc. # 25-1, at 44.]

On January 4, 2010, Plaintiffs brought First Amendment retaliation claims against Wolfe for firing them due to their political speech. On April 11, 2011, the Court granted in part and denied in part Defendant's Motion for Summary Judgment. The Court granted the motion as to Robin's claim that she was terminated due to her status as a Democrat, but denied the motion in all other respects.

At trial, the parties agreed to define the allegedly protected speech as: Dwight's identification as a candidate for Cooper County Sheriff and Robin's and Jennifer's identification as supporters of Dwight's candidacy for Sheriff. There was no dispute between the parties regarding the content of the political speech at issue.

4

## II. Discussion

### A. Sufficiency of the Evidence

On this Motion for Judgment as a Matter of Law, Defendant Wolfe first argues:

> The evidence is that plaintiffs engaged in extremely limited protected political activity; namely, Dwight Pfeiffer in running for Sheriff, and Robin Pfeiffer and Jennifer Tice in supporting Dwight's campaign. . . . Here the plaintiffs have presented scant evidence from which a jury might find that some [sic] the very limited protected aspect of their political activities played a motivating role in Jerry Wolfe's decision to discharge them.

[Doc. # 60, Ex. 1 at 2.] Defendant contends that Dwight failed to present a submissible case that his protected speech – i.e., his identification as a candidate for Cooper County Sheriff – was a motivating factor in Defendant's decision to fire him.

"A jury verdict is entitled to extreme deference, and we will not set it aside unless no reasonable jury could have reached the same verdict based on the evidence submitted." *Craig Outdoor Advertising*, 528 F.3d at 1009 (citing *Morse v. S. Union Co.*, 174 F.3d 917, 922 (8th Cir. 1999), *cert. dismissed*, 527 U.S. 1059 (1999); *Ryther v. KARE 11*, 108 F.3d 832, 836 (8th Cir. 1997), *cert. denied*, 521 U.S. 1119 (1997)).

Here, the jury returned a verdict in favor of Dwight Pfeiffer. The verdict director for Dwight's claim instructed the jury as follows:

> Your verdict must be for Plaintiff Dwight Pfeiffer if his identification as a candidate for Cooper County Sheriff was a motivating factor in the Defendant's decision to discharge Dwight Pfeiffer.
>
> However, your verdict must be for the Defendant if the above element has not been proved, or if it has been proved that the Defendant would have discharged Plaintiff Dwight Pfeiffer regardless of his identification as a candidate for Cooper County Sheriff. You may find that Plaintiff Dwight

> Pfeiffer's identification as a candidate for Cooper County Sheriff was a motivating factor in the Defendant's decision if it has been proved that the Defendant's stated reasons for his decision are not the real reason, but are a pretext to hide discrimination.
>
> As used in this instruction, Plaintiff Dwight Pfeiffer's identification as a candidate for Cooper County Sheriff was a "motivating factor," if his identification as a candidate played a role in the Defendant's decision to discharge Dwight Pfeiffer. However, Plaintiff Dwight Pfeiffer's identification as a candidate for Cooper County Sheriff need not have been the only reason for the Defendant's decision to discharge Dwight Pfeiffer.
>
> You may not return a verdict for Plaintiff Dwight Pfeiffer just because you might disagree with the Defendant's decision or believe it to be harsh or unreasonable.

[Doc. # 54 at 15.] Defendant does not challenge the law as stated here, but rather contends that no reasonable juror could have found for Dwight Pfeiffer based on the evidence submitted.

Although there was sufficient evidence from which the jury could have concluded that Dwight was discharged for reasons other than his identification as a candidate for Cooper County Sheriff, there was also sufficient evidence supporting its decision that Dwight's candidacy was a motivating factor in Defendant's decision to fire him. The circumstantial evidence here is substantial. After running against Dwight in the election, Defendant Wolfe fired Dwight – along with his wife and step-daughter – as soon as he took office. In fact, he delivered the termination notices personally at their home before he took office. Plaintiffs were the only employees terminated by Wolfe at that time. Wolfe also testified that he had hoped that Dwight would leave voluntarily if he won the election. The reasons that Defendant Wolfe listed in the letter to Dwight were: "1. Modification of staffing

6

arrangements[;] 2. Your services no longer required." [Doc. # 25-1, at 2.] In documents sent to the Missouri Department of Public Safety, Wolfe stated only "[s]ervices no longer needed," as the reason for Dwight's and Robin's dismissal. [Docs. # 25-1, at 10, 14.] Especially since Wolfe emphasized the necessity of trust in police work, one could have expected him to indicate to the Missouri Department of Public Safety that Dwight could not be trusted if that were his rationale for discharging him.

A reasonable juror could have concluded that Wolfe fired Dwight because he ran against him for Cooper County Sheriff and did not want him in his office. The jury unanimously reached that conclusion after hearing Dwight and Wolfe testify – allowing the jurors to judge their credibility – even while it denied the claims of Robin and Jennifer. The Court declines to overturn the jury's verdict based on a lack of evidence.

## B.     Whether the Speech was Protected under *Pickering*

Defendant also argues that under the balancing test articulated in *Pickering v. Board of Education*, 391 U.S. 563 (1968), his actions were justified as a matter of law, "even if the plaintiffs were to establish – which Wolfe disputes – that the protected elements of their activities played a motivating role in the decision to discharge them." [Doc. # 60, Ex. 1 at 3.] Additionally, Defendant Wolfe now makes a related argument that Dwight Pfeiffer failed to present a submissible case against him in his individual capacity due to qualified immunity.

As Justice Kennedy recently explained:

> *Pickering* and the cases decided in its wake identify two inquiries to guide interpretation of the constitutional protections accorded to public employee speech. The first requires determining whether the employee spoke as a citizen on a matter of public concern. If the answer is no, the employee has no First Amendment cause of action based on his or her employer's reaction to the speech. If the answer is yes, then the possibility of a First Amendment claim arises. The question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public. This consideration reflects the importance of the relationship between the speaker's expressions and employment.

*Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (citations omitted).

Defendant cites *Bailey v. Department of Elementary and Secondary Education* to argue that a defendant in a First Amendment retaliation case is entitled to a judgment upon establishing that the plaintiff's speech caused, or could have caused, disharmony or disruption in the workplace. 451 F.3d 514, 522 (8th Cir. 2006). Unlike this case, in *Bailey* "the jury answered affirmatively when asked whether Bailey's speech . . . caused or could have caused workplace disharmony." *Id.* at 522. *Bailey* explicitly followed *Shands v. City of Kennett*: "in determining whether particular speech caused disruption in the workplace and therefore is not protected . . . '[e]vidence of actual disruption . . . is not required in all cases.'" *Bailey*, 451 F.3d at 521 (quoting *Shands*, 993 F.2d 1337, 1344 (8th Cir. 1993)).

However, the year after *Bailey* and *Garcetti* were decided, the Eighth Circuit revisited the issue of whether a defendant must show that the speech in question caused an actual disruption in the workplace in order for that speech to lose First Amendment protection. Judge Diane Murphy wrote:

> In order for the *Pickering* balancing test to be relevant appellants must have produced evidence to show that the speech of [the plaintiffs] adversely affected

8

the efficiency of the sheriff's department. Appellants assert that they need not show "actual disruption," but only that "the ordinary or foreseeable effect of the conduct" would be to disrupt department efficiency . . . . Although law enforcement predictions of disruption are due some deference, the *Pickering* balancing test only need be conducted if a government employer has produced evidence of workplace disruption. *See*, *e.g.*, *Kincade v. City of Blue Springs, Mo.*, 64 F.3d 389, 398 (8th Cir. 1995) (bare allegations that speech negatively impacted workplace efficiency insufficient to reach *Pickering* balancing test); *Buzek v. County of Saunders*, 972 F.2d 992, 997 (8th Cir. 1992)[.]

*Shockency v. Ramsey County*, 493 F.3d 941, 949 (8th Cir. 2007). In *Shockency*, the defendants pointed to deposition testimony indicating that the plaintiff's coworkers tried to provoke him because of his speech, "but this evidence was insufficient to show disruption within the department." *Id.* at 950; *see also Belk v. City of Eldon*, 228 F.3d 872, 881 (8th Cir. 2000) ("Although the record contains ample evidence that Eldon's city hall had become a tumultuous place to work, there is no indication that Belk's speech was the cause of that tumult."). Because there was no evidence that the speech which the plaintiffs alleged to be protected actually caused a disruption in the sheriff's department, *Shockency* found that the speech was indeed protected and that the defendant sheriff was not entitled to qualified immunity.

Here, because there was at least some limited evidence of workplace disruption which might have been caused by the narrowly defined speech – i.e., Dwight's identification as a candidate – the Court submitted special interrogatories to the jury out of an abundance of caution. The jury answered as follows:

> 1. Did Dwight Pfeiffer's identification as a candidate for Cooper County Sheriff cause the dispute of August 2008 concerning the jail personnel?

    \_\_\_\_ Yes      \_\_X\_ No
(Mark an "X" in the appropriate space)

2. Did that dispute adversely affect the efficiency of the Cooper County Sheriff's Department?

    \_\_X\_ Yes      \_\_\_\_ No
(Mark an "X" in the appropriate space)

3. Did Dwight Pfeiffer's identification as a candidate for Cooper County Sheriff cause Jennifer Tice to misuse the equipment in the Cooper County Sheriff's Department?

    \_\_\_\_ Yes      \_\_X\_ No
(Mark an "X" in the appropriate space)

4. Did Jennifer Tice's misuse of the equipment adversely affect the efficiency of the Cooper County Sheriff's Department?

    \_\_X\_ Yes      \_\_\_\_ No
(Mark an "X" in the appropriate space)

[Doc. # 58 at 2.] Thus, the jury concluded that although there were actual disruptions in the Cooper County Sheriff's Department, they were not caused by Dwight's candidacy – which the jury also concluded was a motivating factor behind the Defendant's decision to fire him.

Because the jury specifically concluded that Plaintiff's speech did not cause the disruptions cited by Defendant Wolfe, the Court finds that Defendant is not entitled to qualified immunity in his individual capacity.[1] In *Grantham v. Trickey*, the Eighth Circuit

---

[1] While the Court already rejected Defendant's qualified immunity argument on summary judgment, only now does Defendant support that argument by reference to the *Pickering* balancing test. *See Bartlett v. Fisher*, 972 F.2d 911, 916 (8th Cir. 1992) ("[O]ur decisions in *Darnell v. Ford*, 903 F. 2d 556 (8th Cir. 1990), and *Cooper v. Petray*, 854 F.2d 301 (8th Cir. 1988), are factually distinguishable because defendants made no attempt to invoke the *Pickering* balancing test in support of their qualified immunity defenses.").

acknowledged that its cases had "reached different conclusions on the question of when an individual's right to free speech in public employment is 'clearly established' for the purposes of qualified immunity." 21 F.3d 289, 293 (8th Cir. 1994). *Grantham* held that individual defendants are entitled to qualified immunity where there is specific and unrefuted evidence that the employee's speech affected morale and substantially disrupted the work environment, explaining:

> Our decision will not allow public employers to fire employees for legitimate free speech activity and receive the cover of qualified immunity by simply asserting the exercise of free speech rights affected morale. We first point out that the plaintiff employee is free to produce countervailing evidence that there was no effect on morale to create a question of fact on that issue. *See Gainor v. Rogers*, 973 F.2d 1379, 1385 (8th Cir. 1992) ("Once a genuine issue of material fact is found to exist, the defense of qualified immunity shielding the defendant from trial must be denied.").

*Id.* at 295 n.4. Here, not only was there a genuine issue of material fact, but Plaintiff Dwight Pfeiffer prevailed on that question of fact. Regardless, at trial it was undisputed between the parties that qualified immunity could not apply to Plaintiffs' claims against Defendant in his official capacity.

Finally, guided by the jury's factual findings, the Court must consider whether Dwight Pfeiffer's identification as a candidate for Cooper County Sheriff was protected speech for which Sheriff Wolfe could be found liable under the *Pickering* line of cases. First, as Defendant appears to concede, by running for public office, Dwight spoke as a citizen on a matter of public concern. *See Burson v. Freeman*, 504 U.S. 191, 196 (1992) ("the First Amendment has its fullest and most urgent application to speech uttered during a campaign

11

for political office") (citation omitted); *Darnell v. Ford*, 903 F.2d 556, 563 (8th Cir. 1990) (plaintiff's support for one candidate for patrol superintendent constituted speaking as a citizen on a matter of public concern).

Second, a government employer is not liable for an adverse employment action if the government interest outweighs the interest of the employee in his expressive conduct. *Shockency*, 493 F.3d at 948. "In cases where the public employer cannot demonstrate that the employee's speech disrupted the workplace, however, the court need not proceed to a specific *Pickering* factor analysis absent exceptional circumstances." *Belk*, 228 F.3d at 881. The Eighth Circuit has repeatedly explained:

> Before the Court commences the *Pickering* balancing test, however, it is critical to determine whether the defendant has produced sufficient evidence that the speech had an adverse effect on the efficiency of the employer's operations. In other words, to put the *Pickering* balancing test at issue, the public employer must proffer sufficient evidence that the speech had an adverse impact on the department. The more the employee's speech reflects matters of public concern, the greater the employer's showing must be that the speech was disruptive before the speech can be punished.

*Id.* (quoting *Sexton v. Martin*, 210 F.3d 905, 911-12 (8th Cir. 2000)). Because the jury specifically concluded that Plaintiff Dwight Pfeiffer's speech did not cause the disruptions cited by Defendant Wolfe, the Court finds that the speech in question is protected as a matter of law and the Court need not proceed to a specific *Pickering* factor analysis.

Even assuming arguendo that Defendant could demonstrate that Dwight's identification as a candidate for Cooper County Sheriff disrupted the workplace, a *Pickering* factor analysis yields the same result. The *Pickering* factors include: (1) the need for

12

harmony in the office or work place; (2) whether the government's responsibilities require a close working relationship to exist between the plaintiff and co-workers when the speech in question would cause the relationship to deteriorate; (3) the time, manner, and place of the speech; (4) the context in which the dispute arose; (5) the degree of public interest in the speech; and (6) whether the speech impeded the employee's ability to perform his duties. *Belk*, 228 F.3d at 880-81.

The sole factor that could weigh in favor of Defendant Wolfe is that there was some evidence submitted at trial indicating that a close working relationship is necessary within the Cooper County Sheriff's Department. However, the jury specifically concluded that Dwight's identification as candidate for Sheriff did not cause the disruption or disharmony cited by Defendant – and thus could not be said to cause any deterioration of Dwight's relationship with his co-workers, at the same time finding that Robin and Jennifer did create problems in the workplace. Nor was there evidence that the speech in question impeded Dwight's ability to perform his duties. The time, manner, and place of Dwight's candidacy was during a campaign for political office, where the First Amendment has its fullest and most urgent application. *Burson*, 504 U.S. at 196. The dispute between Wolfe and Dwight arose in the context of the form of public debate at the very core of our democratic system of government: an election for public office. Not only did Dwight himself have a strong interest in his right to identify himself as a candidate for office, but there is also a clear public interest in allowing sheriff's deputies to run for the office of sheriff. *See Pickering*, 391 U.S. at 572 (Because teachers are "the members of a community most likely to have informed and

13

definite opinions as to how funds allotted to the operations of the schools should be spent . . . it is essential that they be able to speak out freely on such questions without fear of retaliatory dismissal.").

For the reasons stated above, Dwight Pfeiffer's identification as candidate for Cooper County Sheriff was protected under the First Amendment. Because the jury concluded that Dwight's candidacy was a motivating factor behind Defendant's decision to fire him, Dwight is entitled to his judgment for actual damages of $50,000.

## III. Conclusion

Accordingly, it is hereby ORDERED that Defendant Jerry Wolfe's Motion for Judgment as a Matter of Law at the End of All Evidence [Doc. # 60, Ex. 1] is DENIED.

s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: May 23, 2011  
Jefferson City, Missouri